**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| WILLIAM A. HIATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:12-cv-01438-TWP-TAB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff William Allen Hiatt ("Mr. Hiatt") requests judicial review of the final decision of the Commissioner of the Social Security Administrator ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS in part** and **REMANDS in part** the Commissioner's decision.

**I. BACKGROUND**

**A. Procedural History**

Mr. Hiatt filed his applications for DIB and SSI on February 19, 2009, alleging a disability onset date of December 4, 2007. These claims were initially denied on May 22, 2009, and upon reconsideration on July 13, 2009. Thereafter, Mr. Hiatt requested a hearing on July 22, 2009, and on April 19, 2010, a video hearing was held before Administrative Law Judge Gregory M. Hamel ("the ALJ"). On September 16, 2010, the ALJ denied Mr. Hiatt's applications, and on October 14, 2011, the Appeals Council affirmed the ALJ's denial, thus making it the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R § 416.1481. On

February 22, 2013, Mr. Hiatt filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

**B.     Factual and Medical Background**

Mr. Hiatt was forty-six years old at the time of his hearing and suffered from several physical impairments related to his spine including cervical disc protrusion, spondylosis, and spinal stenosis. Mr. Hiatt has passed the eleventh grade, but never graduated from high school. He has a good work record and previously worked as a semi-truck driver and a furniture mover.

In December 2007, while working as a commercial driver, Mr. Hiatt was hit in the side of his head with the door of his semi-truck. He immediately began to experience dizziness and a headache, but was able to drive himself to the hospital. At the hospital has was administered a computerized tomography scan (a "CT scan") that reported normal conditions. After being dismissed from the hospital, however, Mr. Hiatt continued to experience dizziness, vomiting, and reported "passing out" "at least every day" and "sometimes two or three times a day."

Starting in February 2008, Mr. Hiatt began to see a myriad of specialists concerning dizziness related to the accident. Throughout these visits many of the doctors confirmed Mr. Hiatt's subjective experience of dizziness and "syncopal episodes," or fainting. In fact, Dr. Vincent Ostrowski, physical therapist Sharon Drehs, Dr. Michael Coscia, Dr. Kristi George ("Dr. George"), Dr. Duan Pierce ("Dr. Pierce"), Dr. Fernando R. Montoya, Dr. Guy F. Perry ("Dr. Perry"), and Dr. Robert Gregori ("Dr. Gregori") all reported finding symptoms of dizziness or vertigo. These diagnoses were based mostly on subjective self-reporting on the part of Mr. Hiatt. One doctor, Dr. Pierce, also found that Mr. Hiatt experienced ataxia[1] causing severe dizziness when he was asked to look to the far left or the far right. Based on these diagnoses, several

---

[1] "Ataxia" is "failure of muscular coordination; irregularity of muscular action." http://medical-dictionary.thefreedictionary.com/ataxia

2

experts recommended that Mr. Hiatt should not continue driving or working at heights or with machinery.

While most of the medical experts that examined Mr. Hiatt found symptoms of dizziness, the cause and severity of these symptoms is unclear. Mr. Hiatt has undergone several CT scans all of which returned normal results with no signs of physical impairments. He has also had electroencephalogram (EEG), electrocardiogram (EKG), and magnetic resonance imaging (MRI) tests performed which also reported normal results. Dr. George concluded that the dizziness Mr. Hiatt experienced had no clear basis and appeared to be "nonphysiologic." He diagnosed these symptoms as "conversion reactions." Dr. Perry also concluded that there was not a physiologic basis for these symptoms. Both Dr. George and Dr. Gregori concluded that Mr. Hiatt demonstrated symptom magnification.

In addition, Dr. Gregori stated that Mr. Hiatt had elements of depression that warranted further evaluation and treatment. Dr. Hill found that Mr. Hiatt had medically determinable depression, but found that the depression was not significantly limiting. Dr. Pressner later reviewed and affirmed Dr. Hill's assessment.

**C.    The ALJ's Decision**

The ALJ made the following findings as part of his decision. At step one, the ALJ determined that Mr. Hiatt has not engaged in substantial gainful activity since December 4, 2007. At step two, the ALJ found that Mr. Hiatt has the following severe impairments: post-concussive syndrome and encephalopathy and disequilibrium, cervical protrusion, spondylosis, and spinal stenosis. The ALJ found that Mr. Hiatt's hearing loss did not cause more than a minimal degree of limitation. At step three, the ALJ found that Mr. Hiatt does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Hiatt has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he cannot drive or work in hazardous work environments, including working around moving machinery and at heights. At step four, the ALJ concluded that Mr. Hiatt is unable to perform any of his past relevant work. At step five, the ALJ found that Mr. Hiatt is capable of performing jobs that exists in significant numbers in the national economy, and therefore concluded Mr. Hiatt is not disabled.

## II. DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 1382c(a)(3)(A). The SSA has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.*

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions

4

defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3) (G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew,

reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

## III.  DISCUSSION

In his appeal, Mr. Hiatt raises two issues.  First, he argues that the ALJ did not properly account for Dr. Pierce's findings regarding Mr. Hiatt's ataxia when creating the RFC.  Second, he argues that the ALJ did not follow the correct procedures when evaluating Mr. Hiatt's medically determinable mental impairments.  He argues that because of these errors the Commissioner's final decision should be reversed with a remand for rehearing.

### A.  The ALJ's RFC properly accounted for Mr. Hiatt's ataxia.

One doctor who evaluated Mr. Hiatt, Dr. Pierce, found that when Mr. Hiatt was asked to look to the "far left" or "far right" Mr. Hiatt experienced ataxia that made him very dizzy.  Tr. at 461.  While the ALJ's RFC accounted for Mr. Hiatt's dizziness by preventing him from working at heights, with machinery, or driving, the RFC did not prevent Mr. Hiatt from doing work which could require him to look to the far left or far right.  Tr. at 44.  Mr. Hiatt argues that this is a reversible error.  Dkt. 20 at 7.

While the ALJ did not specifically address the ataxia caused by far left or far right gaze in his opinion, he was under no obligation to do so.  An ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988).  Requiring as much would be a heavy burden for any ALJ faced with expansive records of medical evidence.  Rather, "the ALJ does not need to meet the impossible burden of mentioning *every* piece of evidence, but he or she has *at the least* the obligation to provide a justification for rejecting considerable evidence that is both counter to the Secretary's position and is essentially uncontradicted." *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill 1991) (emphasis in original) (internal citation omitted).

7

If Dr. Pierce's testimony was uncontradicted, the ALJ may have had an obligation to address his finding of ataxia, but this is not the case. The ALJ gave "little weight" to Dr. Pierce's opinion because it was "out of proportion to the treatment notes of other doctors, the medical record as a whole, and the claimant's level of activity." Tr. at 48. Specifically, Dr. Pierce opined that Mr. Hiatt would have "difficulty working" because he frequently passed out and experienced vomiting and dizziness when he did "any kind of physical activity." Tr. at 461. Dr. Hill, however, found that Mr. Hiatt had no severe impediments and would require no restrictions on the activities of daily living. Tr. at 466, 476. This opinion was later supported by Dr. Pressner. Tr. at 488. Dr. Perry also found that Mr. Hiatt was capable of lifting ten pounds on a "constant basis." Tr. at 535. Dr. Montoya found that Mr. Hiatt had no external limitations, including no limitations concerning the length of time he could walk, push or pull, or carry items. Tr. at 481. His findings were later affirmed by Dr. Lavallo. Tr. at 489. As the medical evidence demonstrates, Dr. Pierce's claim that Mr. Hiatt was unable to do any kind of physical activity was directly contradicted. Because Dr. Pierce's testimony was not uncontradicted, the ALJ was under no obligation to specifically address all of the evidence contained in that opinion. *Parks*, 766 F. Supp. at 635.

Mr. Hiatt's argument rests entirely on three sentences of evidence taken from a medical record of hundreds of pages. Mr. Hiatt attempts to isolate these few sentences and claim his case should be reversed because they were not specifically addressed. This approach to judicial review is simply untenable. The ALJ's finding that Dr. Pierce's diagnosis deserved little weight because it was contradicted elsewhere in the record adequately addresses why the findings within Dr. Pierce's opinion were not addressed in the RFC. While Mr. Hiatt would have liked this evidence to be addressed more specifically, the ALJ is only required to "minimally articulate his

reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

Furthermore, the ALJ clearly articulated his reasons for not finding the testimony of Mr. Hiatt credible. Specifically, Mr. Hiatt stated that he could only sit for a few minutes without fidgeting, yet he was able to sit through a forty-five minute hearing without any problems. Tr. at 47. In addition, Mr. Hiatt receives no significant treatment for his issues, takes no prescribed medication and several of his claimed physical impairments were contradicted in medical tests. *Id.* Mr. Hiatt reported that he no longer smokes or drinks, but the medical record belies these claims. *Id.* And perhaps most damaging to Mr. Hiatt's credibility is his claims that he unable to cook, shower, or walk through a grocery store without feeling dizzy and sometime passing out, yet he continues to drive. *Id.* Mr. Hiatt's claims of ataxia rely entirely on the testimonies of Mr. Hiatt or Dr. Pierce, yet as the ALJ found, neither of these party have the credibility to sustain this argument.

**B.     The ALJ erred when he failed to adequately address Mr. Hiatt's mental impairments of depression and conversion reaction and this error was not harmless.**

Mr. Hiatt's second argument—that the ALJ failed to adequately address his mental impairments—is more compelling. Indeed, the ALJ committed two errors when evaluating Mr. Hiatt's mental impairments, the first occurring at step two of the ALJ's opinion. At step two of his evaluation, the ALJ must determine whether the applicant has any severe "medically determinable physical or mental impairments." SSR 96-3p, 1996 WL 374181 at *1. As the Social Security Rulings state, "once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe."

9

*Id.* at *2. These rulings further state that a "determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s)." *Id.*

Several doctors found that Mr. Hiatt suffers from depression and conversion reaction, yet there is no evidence the ALJ evaluated these findings in his step two analysis. Dr. Perry, Dr. Gregori, and Dr. Hill all diagnosed Mr. Hiatt with depression. Tr. at 530, 539, 469. In addition, Dr. George and Dr. Perry found that Mr. Hiatt's dizziness and vertigo were the result of a "conversion reaction." Tr. at 454, 534. This evidence is enough to establish that Mr. Hiatt suffered from medically determinable impairments that required an evaluation at step two to determine the severity. Yet the ALJ's opinion at step two fails to mention either the conversion reaction or depression. While the ALJ was under no obligation to consider these impairments severe, the ALJ must at least offer some evidence that they were considered at all. The Court is unable to determine the accuracy of the ALJ's evaluation at step two because there is nothing on the record suggesting that the ALJ even engaged in a "careful evaluation of the medical findings" for non-severe impairments that is required in step two. SSR 96-3p at *2.

The Commissioner argues that this is a harmless error because the conversion reaction and depression do not present any additional limitations on Mr. Hiatt because these conditions were either not severe or were already accounted for in Mr. Hiatt's RFC. Dkt. 19 at 17. These conclusions, however, are post hoc conjecture on the part of the Commissioner. The record is silent as to whether the ALJ felt these impairments were non-severe or accounted for in the ALJ's RFC. While several of the medical experts found these impairments to be non-severe, the ultimate determination of whether an impairment is severe is specifically reserved for the ALJ. SSR. 96-5p. The ALJ was free to find these impairments non-severe, but the ALJ "must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ failed to build a bridge of any kind that this Court could examine for accuracy or logic and this is grounds for remand. *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010).

The ALJ committed an additional error when he failed to apply the "special technique" to Mr. Hiatt's mental impairments of depression and conversion reaction. Under this special technique, the ALJ must rate both the degree and severity of each of the applicant's mental impairments. 20 C.F.R. § 404.1520a. An ALJ is required to apply the special technique to all medically determinable mental impairments. *Id.* The decision of the ALJ "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* An application of the special technique is totally absent from the ALJ's opinion.

The Commissioner is correct that failure to apply the special technique to mental impairments may be harmless. In *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013), the ALJ's failure to apply the special technique was not grounds for remand because at step two "ALJ provided enough information to support the 'not severe' finding." Thus, an "ALJ's failure to fully comply with the special technique may be harmless, so long as substantial evidence supports the ALJ's conclusion at step two that [the applicant's] mental impairment was not severe." *Lopez v. Colvin*, 12 C 7025, 2014 WL 117477, at *8 (N.D. Ill. Jan. 10, 2014) (citing *Pepper*, 712 F.3d at 366). In this case, however, there is not only a lack of substantial evidence to support the ALJ's conclusion at step two; there is no evidence of any kind supporting any conclusion about Mr. Hiatt's mental impairments at step two. Without this evidence, the ALJ is

required to apply the special technique to all medically determinable mental impairments. 20 C.F.R. § 404.1520a. Failure to do so constitutes an error requiring remand. *See Lane v. Astrue*, 09 C 3277, 2012 WL 1623204 (N.D. Ill. May 8, 2012).

To be clear, the Court is not holding that Mr. Hiatt has severe mental impairments, or that he is, in fact, disabled. Rather, this Court holds that the "ALJ gave short shrift to potential limitations caused by [Mr. Hiatt's] mental impairments, and that error requires a remand." *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008).

## IV.  CONCLUSION

The ALJ's RFC properly accounted for Mr. Hiatt's ataxia, therefore, the Court **AFFIRMS** the ALJ's decision in this regard**.** However, for the reasons stated above, the Court **REMANDS** the Commissioner's decision for further proceedings consistent with this opinion.

**SO ORDERED.**

Date: 03/18/2014 _____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
J. FRANK HANLEY II, P.C.
lauras@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov